## THE AMERICAN EXCHANGE NATIONAL BANK OF CHICAGO

### v.

### CHICAGO NATIONAL BANK.

*Banks—Action on Checks—Review of Evidence—Presentation for Payment—Stoppage of Payment.*

1. In an action on a check drawn on the defendant bank in favor of a third party and by him deposited in the plaintiff bank in the usual course of business, after the defendant had refused to certify it, upon a review of the evidence, it is *held:* That the defendant was in funds with which to pay the check when it was presented; and that certain drafts and a letter of credit were then treated by the defendant as being to the credit of the drawer.

2. It *seems* that the presentation of the check to the defendant's cashier before the opening of the bank and his statement that payment had been stopped and that it would not be paid if tendered for payment, rendered further presentation unnecessary, the rights of the parties being fixed by the condition of the drawer's account at that time.

[Opinion filed December 18, 1888.]

APPEAL from the Superior Court of Cook County; the Hon. JOSEPH E. GARY, Judge, presiding.

Messrs. SWIFT & CAMPBELL, for appellant.

There were not sufficient funds to the credit of the drawer of this check to pay it when presented for payment. In this State a check is such an assignment as enables the drawee to maintain suit in his own name against the bank on which the

FIRST DISTRICT—MARCH TERM, 1888.    539

Am. Exch. Nat. Bk. of Chicago v. Chicago Nat. Bk.

check is drawn, if sufficient funds are at the credit of the drawer when the check is presented for payment. Munn v. Burch, 25 Ill. 35; Bank of America v. Indiana Banking Co., 114 Ill. 483. The delivery of a check by the drawer to the drawee fixes the rights of the latter against the former, but as against the bank on which the check is drawn, presentation for payment is necessary to fix the rights of the drawee. Shaffner v. Edgerton, 13 Ill. App. 137; Fourth National Bank v. City National Bank, 68 Ill. 398. This presentation for payment must be made in banking hours. Bickford v. First National Bank, 42 Ill. 244. The check in suit was not presented for payment at the interview which took place between Mr. Blount, the messenger of appellee, and the cashier and assistant cashier of appellant, before ten o'clock upon the morning of June 15th. As to the request for certification, if any such request was made by Mr. Blount, it is unnecessary to say that the American Exchange Bank was under no obligation to certify. The holder of a check has no right to demand from the bank anything except payment. Certification is a mere matter of accommodation, and it is entirely at the option of the bank to certify or not. Daniel on Negotiable Inst., Sec. 1601. The fact that appellant stamped the check " payment stopped " does not prevent its availing itself of the defense of want of funds.

"The rule is well settled that unless the representation of the party to be estopped has also been really acted upon, the other party acting differently, that is to say, from the way he would otherwise have acted, no estoppel arises." Bigelow on Estoppel, p. 549; Hefner v. Vandolah, 57 Ill. 520; Ball v. Hooten, 85 Ill. 159.

"It is also well established that in order to the estoppel there must have been knowledge, actual or constructive, by the party making the representation, that the other party intended at the time to act upon it." Bigelow on Estoppel, p. 529; Andrews v. Lyons, 11 Allen, 349.

The *onus* is upon appellee to show it has been injured or prejudiced because appellant assigned as a reason for non-payment that payment had been stopped, instead of assigning as a

540    Appellate Courts of Illinois.

Vol. 27.]    Am. Exch. Nat. Bk. of Chicago v. Chicago Nat. Bk.

reason that there were no funds, or (as it had a right to do) failing or refusing to assign any reason whatever. Althorp v. Beckwith, 14 Ill. App. 628.

The giving of a wrong or even a false reason for an act, does not prevent the party from afterward availing himself of the true reason. Lynch v. Stone, 4 Den. 356; Smith v. Douglass, 4 Daly, 191.

"Mere acquiescence or waiver without consideration is not binding if a change of purpose will not affect the rights of others." Bigelow on Estoppel, p. 568; Ripley v. Ætna Insurance Company, 30 N. Y. 136, 164.

The bank was certifying checks of Kershaw & Co. when this check was presented under a special agreement which provided that this particular check should not be paid. Not only was the bank, therefore, at liberty to refuse payment of this check, but it was its duty to refuse. First National Bank v. Pettit, 41 Ill. 492.

The drawer of the check had a right to stop payment as against the drawee, and appellee stands in no better position. This check was given upon June 13th to correct an error in a previous check. It does not appear that it was presented at all until the afternoon of June 14th, when it was presented for certification, and not for payment. Meanwhile the drawee had failed, owing the drawer $100,000, so that the drawee could not have maintained any action against the drawer for this $10,000. Appellee took the check with notice that the American Exchange had refused to certify it, and appellee has never placed it to the credit of the drawee, and has never paid any consideration for it.

Messrs. Tatham & Webster and Millard & Smith, for appellee.

The rule in this State, established by a long line of decisions, is that when a depositor draws his check on his banker, such check operates to transfer the sum therein named to the payee, provided the depositor has on deposit a sufficient sum to pay the check at the time it is presented for payment. Munn v. Burch, 25 Ill. 21; Marine Bank of Chicago v. Ogden, 29 Ill.

FIRST DISTRICT—MARCH TERM, 1888.    541

Am. Exch. Nat. Bk. of Chicago v. Chicago Nat. Bk.

248; Brown v. Leckie, 43 Ill. 497; Bickford v. First National Bank of Chicago, 42 Ill. 238; Union Nat. Bank v. Oceana County Bank, 80 Ill. 212; National Bank of America v. Indiana Banking Co., 114 Ill. 483; Merchants Nat. Bank v. Ritzinger, 20 Ill. App. 27.

It is not claimed that any other check or demand existed against the balance of $11,401.17 which was in the bank at the close of business on the 14th, and the mere retenti of the Eggleston check by appellant did not constitute an acceptance on its part.  Overman v. Hoboken City Bank, 2 Vroom, 563.

Appellant claims that the two one hundred thousand dollar drafts and the letter of advice have never been paid and therefore appellant could not be held liable for refusing to pay a check drawn against a deposit, if it subsequently turned out that the paper deposited was not good.  We understand the law to be, that when the depositor has made, in good faith, a deposit of the bills of another bank supposed at the time by both parties to be solvent but which in fact was not, and the amount so deposited was in the ordinary course passed to the credit of the depositor as so much money, so many dollars, the bank receiving such deposits has been held to pay the amount to the depositor in good money, although it may be shown, as a fact, that the bills have never been paid; and this rule is said to extend to a bank which undertakes to make collection for its customer and pass the amount to the credit of the customer.

When the bank receiving specific funds or moneys appropriates such funds to its own use, and gives credit in the ordinary form to the depositor, there is no bailment of the specific funds or moneys received, and a simple indebtedness accrues. Morse on Banks and Banking, 43; Oddie v. Nat. Bank of New York, 45 N. Y. 735; Marine Bank of Chicago v. Birney, 28 Ill. 90; Marine Bank of Chicago v. Chandler, 27 Ill. 525; Marine Bank of Chicago v. Rushmore, 28 Ill. 463; Marine Bank of Chicago v. Ogden, 29 Ill. 248; Chicago Marine and Fire Ins. Co. v. Carpenter, 28 Ill. 360.

The drawer has no control over the fund after he delivers the check, and an assignment carries with it the legal title to

542    APPELLATE COURTS OF ILLINOIS.

VOL. 27.]    Am. Exch. Nat. Bk. of Chicago v. Chicago Nat. Bk.

the amount of money therein named to each successive holder, and the drawer can not stop payment. Union Nat. Bank v. Oceana Bank, 80 Ill. 213.

When the payee of the check in suit presented it to the appellant for certification on the 14th of June, it was notice to appellant that the fund had been assigned, and the bank was in duty bound to retain the funds to meet it, if that amount was in the bank unincumbered at the time of the presentation.

The courts of this State hold that the drawing of a check by a depositor on his banker, operates as both a legal and an equitable assignment of the fund so drawn, if the amount is in the bank to the credit of the drawer. Munn v. Burch, 25 Ill. 35; Sheffner v. Edgerton, 13 Ill. App. 132.

The legal effect of a legal or an equitable assignment is well known. The doctrine is well settled that courts of law will recognize and protect the rights of the assignee of a chose in action, whether the assignment be good at law or in equity only. Morris v. Cheney, 51 Ill. 452.

The law as laid down in England and followed by nearly all the States in this country and, as we think, in Illinois, is, that in order to protect his title against the debtor it is indispensable that the assignee should give notice of the assignment to the debtor or holder of the fund, for otherwise a priority may be obtained by a subsequent assignee or the debt may be discharged by a payment to a subsequent assignee before such notice. Story's Eq. Jur., Secs. 1046, 1047; Foster v. Black stone, 1 M. & Keen, 297; Meux v. Bell, 1 Hare Ch. R. 73; Bispham's Eq. 168; Adams' Eq. 145; Pomeroy's Eq. Jur., Vol. 2, Secs. 688–696; Barrow v. Porter, 44 Vt. 587; Muir v. Schenck, 3 Hill, 228; Morris v. Cheney, 51 Ill. 451; Moore v. Gromlat, 3 Ill. App. 442.

Such notice operates as a constructive transfer of possession, and creates a trust in favor of the assignee and a lien thereon. Adams' Eq. Jur., p. 161; Pomeroy's Eq. Jur., Vol. 2, Sec. 688; Wade on Law of Notices, Secs. 435, 436; Loomis v. Loomis, 26 Vt. 203; Cladfetter v. H. Cox, 1 Sneed, 330; McWilliams v. Webb, 32 Iowa, 578; Murdock v. Finney, 21

Mo. 138; Woodbridge v. Perkins, 3 Day, 364; Bank of Commerce's Appeal, 73 Tenn. 60; Muir v. Schenck, 3 Hill, 229.

Moran, J.   On the 13th day of June, 1887, C. J. Kershaw & Co. drew their check on the American Exchange National Bank of Chicago, appellant, for $10,000, payable to the order of M. Rosenfeld & Co., and on the same day delivered a check to the payee.   On the 14th of June, M. Rosenfeld & Co. presented the check to the appellant at its bank for certification, and afterward, on the same day, deposited the check with appellee.   Appellant refused to certify the check when it was so presented.   The check was received by appellee in the usual course of business on the 14th, and on the morning of the 15th of June, the appellee presented the check to the cashier and assistant cashier of appellant before the opening of the bank on that day, and explained to it why the check had been given.   Immediately upon the opening of the bank at ten o'clock, the appellee, through its messenger, Fred M. Blount, presented the check to appellant and demanded payment of the same.   The appellant took the check when payment was demanded and endorsed upon it the words, "American Exchange National Bank, Chicago, returned account payment stopped," and returned it to the messenger refusing to pay the same.   The check was never paid.   On the 14th day of June, the day the check was first presented to the appellant for certification, the books of appellant showed a credit to the account of C. J. Kershaw & Co. of funds on hand in the amount of $11,401.17.   This balance was on the books of the appellant on the 14th at the time the check was first presented, and was continued on the books until the bank opened on the morning of the 15th.   This balance was there when the messenger talked with the cashier and the assistant cashier before the opening of the bank on the 15th.   The appellant at the time of the interview between the messenger and the cashier on the morning of the 15th, stated that payment of the check was stopped, and that was the only reason given why the bank would not pay it.

The appellant received its instructions to stop payment of the $10,000 check from C. J. Kershaw & Co., on the evening

544 APPELLATE COURTS OF ILLINOIS.

Vol. 27.]  Am. Exch. Nat. Bk. of Chicago v. Chicago Nat. Bk.

of the 14th of June, and claims that it was notified to the same effect on the morning of the 15th. Both notices were subsequent to the presentation of the check in suit for certification and its transfer to appellee. At the time of the interview with the cashiers of appellant on the morning of the 15th of June, and also at the time of the presentation of the $10,000 check for payment at the opening of the bank, appellant held in its possession for the account of C. J. Kershaw & Co., two drafts, each for the sum of $100,000, one payable to the order of C. J. Kershaw & Co., the other to the order of appellant; also a letter of advice which appellant had received to the effect that Messrs. Wilshire, Eckart & Co., of Cincinnati, had deposited $200,000 to the credit of appellant for the use of C. J. Kershaw & Co., from which appellant deducted $800 for exchange, leaving a total credit to C. J. Kershaw & Co. of $399,200, which would make, if credited on the books, together with the $11,401.17 carried over from the 14th, a total credit to C. J. Kershaw & Co., of $410,601.17, on the morning of the 15th.

Appellant did not enter the credit of the two drafts and letters of advice on the books, immediately on receiving the same, but the drafts and letters were about 12:30 or one o'clock P. M., upon the 15th, placed to the credit of C. J. Kershaw & Co., on the books of appellant.

On the 13th day of June, C. J. Kershaw & Co. issued their check to D. Eggleston & Son for $256,878.18, which check was deposited by D. Eggleston & Son with appellant on the same day. Eggleston & Son and C. J. Kershaw & Co. both kept their accounts with appellant. Appellant did not charge the check to C. J. Kershaw & Co.'s account at any time until after the opening of the bank for business on the morning of the 15th. They, however, gave credit to D. Eggleston & Son for the amount of the check on the 13th, the day of its deposit, but on the morning of the 14th, after an interview with D. Eggleston & Son, appellant reversed the credit to Eggleston & Son, and charged back to them the amount of the check credited the day before.

During the whole of the 14th, the day the check in suit was

FIRST DISTRICT—MARCH TERM, 1888.    545

Am. Exch. Nat. Bk. of Chicago v. Chicago Nat. Bk.

presented to appellant for certification, and at the time it was assigned and delivered to appellee, C. J. Kershaw & Co. had upward of $11,491.17 of funds in the hands of appellant, the last named sum being the amount on hand at the close of business on the 14th.

On the morning of the 15th after the two $100,000 drafts and letter of advice had been received, the appellant, for the first time, charged up to C. J. Kershaw & Co., the Eggleston & Son check of $256,878.18.

Some checks of C. J. Kershaw & Co. were certified on the morning of the 15th before the check in suit was presented for payment, but it is not shown by the evidence what was the amount or number of such checks. A list of the Kershaw checks in the order in which they were certified by appellant that day was presented by the paying teller and is in evidence and there is some proof tending to show that appellee's agent, stood sixth or seventh in the line in front of the paying teller's window in the morning, and from this it is argued that at least the first six checks shown on the paying teller's list were certified before the one in suit was presented, and that, therefore, when it was presented, Kershaw & Co. were not in funds, even if the two $100,000 drafts and the letters of credit be counted as to their credit on the morning of the 15th. The difficulty with this argument is that it assumes that all the persons who stood ahead of appellee's agent in the line, presented and obtained the certificate of Kershaw checks.

There is no evidence in the record to justify such assumption. Though appellee's agent stood sixth in line, there is nothing to show that he did not present the second or third Kershaw check that was presented to the cashier that morning. Assuming that the two drafts and the letter of credit were to the credit of Kershaw & Co., on the morning of the 15th, appellant has failed to prove that there was not funds sufficient to pay appellee's check at the time it was presented and payment demanded.

But appellant contends that the two drafts and the letter of credit was not to the credit of Kershaw & Co. till after

twelve o'clock on the 15th, and therefore there were no funds to pay this check when it was presented.

It is true that it appears that the drafts and letter of credit were not entered on the books to the credit of Kershaw & Co. till after noon, but it appears to us to be fairly established by the evidence, that as between appellant and Kershaw, these drafts and the letter of credit were treated as being to Kershaw & Co.'s credit from 10 o'clock in the morning. We can explain appellant's conduct, in charging the Eggleston check and continuing to certify Kershaw & Co.'s checks during the forenoon of the 15th, on no other theory.

There appears to us, also, to be strong reason for holding that the presentation of the check in suit to appellant's cashier before the opening of the bank, and his statement to appellee's agent that the payment of the check had been stopped, and that it would not be paid if tendered for payment, rendered any further presentation of the check unnecessary, and that the rights of the parties would be determined by the condition of Kershaw & Co.'s account at that time, as we have seen there was then to the credit of said account, on the books of the bank, sufficient funds to pay the check. We do not deem it necessary to elaborate this question. If the latter position is not legally tenable, we are satisfied that the judgment is sustained on the ground that when the check was presented to the teller for payment there was then funds to the credit of the drawers sufficient for the payment of said checks.

The judgment of the Superior Court will be affirmed.

*Judgment affirmed.*

GARY, J., took no part in deciding this case.